BRADFIELD *v.* BRADFIELD.

1. DIVORCE— JURISDICTION— RESIDENCE OF PARTIES— STATUTES — CONSTRUCTION.

Section 8624, 3 Comp. Laws, is mandatory, and no court in this State has any authority to grant a decree of divorce unless it affirmatively appears that the complainant has resided within the State for one year immediately preceding the filing of the bill.

2. SAME—RESIDENCE—INTENTION—EFFECT.

In determining whether complainant in a bill for divorce was a resident of the State as required by law, her intention as well as her acts must be considered; intention has always been given large consideration, but intention without acts to support it is not controlling.

3. SAME—EVIDENCE—SUFFICIENCY.

On a bill for divorce, filed by the wife more than two years after her departure from her husband's residence in this State, and within one month after her return to the State for the express purpose of instituting suit, evidence examined, and *held,* that she was not a resident of this State at the time of filing the bill.

4. SAME—PLEADING—ADMISSION OF RESIDENCE—EFFECT.

In a suit for divorce, an admission in the answer of the allegation of residence in the bill cannot confer jurisdiction on the court, if the complainant is in fact a nonresident, nor does it preclude defendant from raising the question.

Appeal from St. Clair; Law, J. Submitted June 8, 1908. (Docket No. 46.) Decided September 10, 1908.

Bill by Elizabeth P. Bradfield against Thomas P. Bradfield for a divorce. From a decree for complainant, defendant appeals. Reversed, and bill dismissed.

*George G. Moore* (*Cyrus A. Hovey,* of counsel), for complainant.

*Rufus G. Lathrop* (*Bowen, Douglass, Whiting & Murfin* and *Francis A. Stace,* of counsel), for defendant.

McAlvay, J.  A decree was granted complainant in this suit for divorce on the ground of extreme cruelty and nonsupport, and she was given the custody of two children.  Defendant appeals, and alleges as reasons for reversing and setting aside the decree that the court did not have jurisdiction (*a*) because of the nonresidence of complainant; (*b*) because of the failure to notify the prosecuting attorney of the pendency of the suit as required by law; (*c*) because the decree is not supported by the evidence.

The provision of our statute upon the matter of the residence of a complainant is as follows:·

" No decree of divorce shall be granted by any court in this State in any case, unless:

"*First*, The party applying therefor shall have resided in this State for one year immediately preceding the time of filing the bill or petition therefor."  Section 8624, 3 Comp. Laws.

The provision is mandatory, and no court in this State has any authority to grant a decree of divorce unless it affirmatively appears that complainant has resided within the State as required by the statute.  In determining whether in this case complainant was a resident of the State under this law, and in any case where residence is to be determined, the intention coupled with the acts of the party must both be considered.  Intention has always been given large consideration, but claimed intention without acts to support it is not controlling.  In this case the undisputed facts disclose that complainant resided with her husband in Grand Rapids, in this State, for several years after their marriage; that two children were born to them; that in June, 1904, complainant with these children, a girl and a boy, went to visit her aunt in Pontiac, and to attend a wedding there, at which the children were to act as ribbon bearers; that she intended to return, but instead, without the knowledge of defendant, was induced to take the children and go with her mother to Atlantic City, N. J.  The record shows that her mother resided at Atlantic

City, N. J., and her father resided at Butte, Mont. These parties had before this had differences. They are both highly educated, refined, and cultivated people. Complainant was the daughter of wealthy parents, and at the time and since her marriage has received from her parents and friends diamonds, personal property, and cash to the amount of more than $25,000. Defendant was a young lawyer of good character, but without means, starting in his profession. Complainant's father was always violently opposed to the marriage of these parties. It is undisputed, as the record shows, that complainant did not intend to separate herself from her husband, and not again return to him, until January 10, 1905. At that time she so wrote him, and the determination then formed has been persisted in, and not been revoked. She had remained at her mother's residence in Atlantic City from the time she went there as above stated, until the time this letter was written.

It is admitted by counsel for complainant that, until she determined to live separately from him, and refused to return to her home in Grand Rapids, his residence continued to be her legal residence. As already stated, she has never revoked her determination to separate and live apart from her husband, and, after she so announced to him, she continued to live in New Jersey. Whatever negotiations between the parties looking towards a reconciliation were had, were the acts of a relative or a friend. Complainant never sought them, and always imposed conditions which she knew defendant could not by any possibility meet. Both she and her counsel insist that she then changed her residence to Pontiac. This contention is based entirely, as far as that time is concerned, upon her testimony that such was her intention. There is no evidence in the case that she so declared at the time. The court must discover from the record whether there are any acts and doings of complainant to support this claim, or whether it was simply an undisclosed intention. She remained in New Jersey for three months next follow-

ing January 10, 1905. Her first return to Michigan was in April, 1905. She remained in the State six months, spending the time in Pontiac and Grand Rapids. Her aunt testifies that she was visiting her and some friends in Grand Rapids. Complainant testifies that while in Grand Rapids she packed her household goods. She returned to New Jersey some time in September, 1905, and continued to remain there, with her children, at her mother's home, until August, 1906, when she came to Michigan for the express purpose of instituting this suit. The bill of complaint was filed September 7, 1906. At this time she was at her aunt's house in Pontiac, and testifies that she was visiting her. During this period she testifies that she attended to the removal of her furniture from Grand Rapids, at about Thanksgiving time, and arranged to establish· her home in Pontiac. Her aunt testifies that she remained about two weeks after Thanksgiving, and then "rushed home to be with her children Christmas." The removal of her furniture at or about the time the bill was filed in this cause is the first act disclosed by this record done by complainant to establish her residence in Pontiac. The record shows that complainant, during 13 of the 20 months intervening between her separation from her husband and the commencement of this suit, was living within the State of New Jersey; that her children lived there all of the time and were sent to school; that when she left Michigan and her husband she selected her place of abode in New Jersey, and by her acts became a resident of that State, thereby losing her residence in Michigan; that at the time of filing her bill she was not a resident of Michigan. Those who were nearest to her at the time so understood it. Her father testified:

" My daughter and her children have made their home with my wife for nearly four years."

Mr. O'Brien testified:

"She was then living with her father and mother at Atlantic City."

He is an eminent lawyer of Grand Rapids, who knew these parties well, knew the circumstances of the case, and counseled her at her father's request.

It is urged that, even should the court hold that complainant was not a resident of this State within the meaning of the statute, defendant by admitting in his answer the allegation of the bill relative to her residence is precluded from raising the question. Such admission did not confer jurisdiction upon the court. If the law were otherwise, the very purpose of the statute would be defeated, and collusive and fraudulent divorces encouraged. Such holding would be against public policy. Upon this question the conclusion of the court is founded upon reason and supported by authority. *Smith* v. *Smith,* 10 N. Dak. 219. In this case the court said:

"Residence must be established to have been within the letter and spirit of the statute before the action was commenced, or the court acquires no jurisdiction of the subject-matter of the action.   *   *   *   Nor would her admission in her answer of plaintiff's residence confer upon the court any jurisdiction in this respect.   *   *   *   It is against the policy of the law that divorces be decreed by consent of the parties immediately interested. It is likewise against the policy of the law that courts should grant divorces to any applicants save bona fide residents of this State."

The supreme court of Indiana, in discussing this question, says:

"In every divorce suit the State, for the enforcement of its policy concerning the marital relation, constitutes the third party, and no admission can be made by the other parties which will affect the public interest." *Prettyman* v. *Prettyman,* 125 Ind. 149.

See, also, *Schmidt* v. *Schmidt,* 29 N. J. Eq. 496; *Bennett* v. *Bennett,* 28 Cal. 600. It will not be necessary to discuss any other questions raised. The decree of the cir-

cuit court is reversed, and a decree will be entered dismissing the bill of complaint, without costs.

MOORE and CARPENTER, JJ., concurred.

GRANT, C. J., and BLAIR, J. We concur in the above opinion, and we also are of the opinion that complainant made no case upon the merits.