SMITH *v*. FOTO.

APPEAL AND ERROR—ACCOUNTING FOR FRAUD—PLEADING.

　　Dismissal of bill for accounting by woman who is alleged to have pretended she had been divorced from her husband in Illinois whereas she had not been *legally* divorced from him by court in Michigan, had undergone a ceremonial marriage with plaintiff and secured a property settlement from him in Florida incident to a suit for divorce between them and, as a result of fraud practiced upon Michigan and Florida courts and plaintiff, had secured a large amount of real and personal property from him *held*, error.

　　Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 13, 1938. (Docket No. 95, Calendar No. 39,954.) Decided June 30, 1938. Rehearing denied October 3, 1938.

　　Bill by Frank G. Smith against Anna Mary Foto (sometimes known as Anna I. Smith) and others for an accounting and other relief and for an injunction. Bill dismissed. Plaintiff appeals. Reversed.

　　*Henry K. Gibson* and *Edward Bryant,* for plaintiff.

　　*Edward N. Barnard,* for defendant.

　　POTTER, J.　April 14, 1937, plaintiff filed a bill of complaint against defendant Anna Mary Foto alleging he is a resident of the city of Miami Beach, Dade county, Florida, and defendant is a citizen of Detroit. The National Bank of Detroit, the Safe Deposit Com-

pany of Detroit, the Wolverine Storage Company, the Schettler Drug Company, and the Mon Mar Oil Corporation were made defendants because of their financial interests in the litigation, but the bill of complaint is really aimed at Anna Mary Foto (also known as Anna I. Smith).

Plaintiff alleges he met Anna Mary in the spring of 1931; she informed him she had been married to a man named Frank Foto but had obtained a divorce from him in Chicago in 1928. At the time plaintiff met her she was visiting in Detroit. Plaintiff and Anna Mary went through a marriage ceremony June 28, 1932, at Bowling Green, Ohio. Thereafter they lived together in Detroit and in 1935 moved to Miami Beach. In the spring of 1936 defendant Anna Mary filed a bill for divorce in the circuit court of Dade county, Florida, against plaintiff and obtained a decree of divorce from him May 21, 1936.

Plaintiff alleges that at the time of the divorce proceedings in Florida he made a property settlement with defendant Anna Mary whereby he conveyed to her a half interest in certain improved real estate and the furniture in Detroit and in a home at Miami Beach, Florida; in addition, transferred to defendant 300 shares of Burroughs Adding Machine Company stock and 700 shares of Lima Locomotive Works stock; that, in addition, he transferred to her during the time they were living together 1,100 shares of common stock of the Scotten Dillon Company, 50 shares of the common stock of the Mon Mar Oil Company, 2,800 shares of the common stock of the Glacial Oil Company, 100 shares of the common stock of the Schettler Drug Company, and $26,000, in par amount, of Dade & Orange county, Florida, bonds, together with jewelry of the value of $3,500, a number of shares of Florida-gold Citrus Company,

a number of shares of Mary Lee Candy Company, and gave her during 1935 and 1936 approximately $13,000 in cash, in addition to other large amounts given her.

He alleges defendant Anna Mary had no right to enter into the marriage relation with him, that she was the wife of Frank Foto; that she never obtained a legal divorce from Frank Foto; that she did not get a divorce from Foto in Chicago but filed a bill for divorce in Wayne county, Michigan, January 23, 1931, alleging she had been for two years a resident of and domiciled in Wayne county, Michigan, although up to that time she had been living in Exeland, Wisconsin; that she obtained a divorce in Wayne county, Michigan, against Frank Foto, based upon an order of publication without personal service of process; that to obtain that decree of divorce she practiced fraud upon the court in Wayne county in that she had not been a resident for two years in Michigan, was not a resident of Michigan at all, was in Detroit on a visit, was visiting in Detroit under the name of Wanda Marino; and, therefore, the Wayne circuit court in chancery had no jurisdiction to grant to her a decree of divorce (1) because of the fraud practiced upon it by the plaintiff in causing it to exercise jurisdiction; and (2) because the decree was void because based upon an order of publication and not upon personal service.

Plaintiff claims he relied upon the representations made by defendant Anna Mary of her having obtained a decree of divorce in Chicago, when he entered into the purported marriage at Bowling Green, Ohio; that by reason of the invalidity of the divorce proceedings between defendant Anna Mary and Frank Foto, she was incapable of contracting marriage with plaintiff and her pretended marriage to

him when she was legally incapable of contracting the same amounted to a fraud; that he would not have transferred the property above mentioned to her had he known her purported marriage to him was a fraud, sham and nullity induced by defendant Anna Mary's conduct; that had he known the fraud practiced by her upon him, he would not have made a property and alimony settlement with her; that she had no right to a property settlement or to alimony. Plaintiff, therefore, asks that an accounting may be had under the direction of the court; a restraining order entered restraining the corporate defendants from paying over any money to defendant Anna Mary, or cashing her checks; and that he may have decree setting aside the pretended marriage settlement made in Florida and recover the property he alleges she fraudulently induced him to transfer to her.

After the filing of the original bill, it was subsequently amended.

Defendant Anna I. Smith (or Anna Mary Foto) moved to dismiss the amended bill of complaint (1) because the court had no jurisdiction for the reason the suit is an attempt to litigate the validity of a property settlement involved in a divorce suit in which a decree was rendered in favor of defendant (as plaintiff) in a court of a foreign jurisdiction having jurisdiction of the subject-matter and of the parties and in which decree of divorce was granted to defendant which in effect ratified and confirmed the property settlement; (2) it appears from the amended bill of complaint the decree of divorce granted defendant from plaintiff in the Florida court is *res judicata* of the validity of the divorce obtained by defendant Anna Mary from Frank Foto in Wayne county, Michigan; (3) this suit constitutes a col-

lateral attack upon the validity of the decree of divorce granted to defendant from Frank Foto in Wayne county, and said decree is not subject to collateral attack; (4) it appears from the amended bill of complaint that valid service by publication was obtained upon defendant Frank Foto in the divorce proceedings and the decree therein is, therefore, not void and not subject to collateral attack; (5) there is a nonjoinder of parties defendant in that Frank Foto is a necessary party to any proceeding wherein it is sought to adjudicate the validity of the divorce granted in the Wayne county circuit court in chancery to defendant Anna Mary against Frank Foto.

This motion was brought on for hearing in the circuit court for Wayne county and a decree entered therein dismissing plaintiff's bill of complaint. From this decree, plaintiff appeals, claiming (1) the decree is not in proper form for the reason defendant moved the court only for an order to dismiss the amended bill of complaint and the court had no power to make a decree; (2) the court erred in dismissing plaintiff's bill of complaint; (3) the court erred in holding the Florida decree was *res judicata* as to the validity of the marriage; (4) the court erred in holding the decree of divorce in the case of *Foto* v. *Foto* in Wayne county in chancery is not subject to collateral attack for perjury as to jurisdictional facts; and (5) the court erred in holding the affidavit of publication in the case of *Foto* v. *Foto* was sufficient on collateral attack.

Under our system of government, one of the essential bases of the union was the provision that full faith and credit should be given by each State to the records, acts and judicial proceedings of every other State. For a decree of divorce to be valid under the full faith and credit clause of the Federal Constitu-

tion, it must appear the court rendering it had jurisdiction of the subject-matter and of the parties. *Reynolds* v. *Stockton,* 140 U. S. 254 (11 Sup. Ct. 773).

Where a wife has acquired a legal domicile in a State prior to making an application for divorce, it is not jurisdictional that the marriage shall have been performed in the State of her acquired domicile; that the grounds for divorce alleged in her bill of complaint should have accrued within the State; that the husband defendant should have been domiciled therein at the time of the filing of her bill of complaint, at the time decree was granted, or at any other time. *Cheever* v. *Wilson,* 9 Wall. (76 U. S.) 108.

No faith or credit is to be given to a decree for divorce obtained in a State where neither of the parties thereto is a *bona fide* resident of the State in which the decree is rendered. *Bell* v. *Bell,* 181 U. S. 175 (21 Sup. Ct. 551); *Winston* v. *Winston,* 189 U. S. 506 (23 Sup. Ct. 852); *People* v. *Dawell,* 25 Mich. 247 (12 Am. Rep. 260); *Reed* v. *Reed,* 52 Mich. 117 (50 Am. Rep. 247); *Dunham* v. *Dunham,* 162 Ill. 589 (44 N. E. 841, 35 L. R. A. 70); *Lister* v. *Lister,* 86 N. J. Eq. 30 (97 Atl. 170).

The Supreme Court of the United States, in *Haddock* v. *Haddock,* 201 U. S. 562 (26 Sup. Ct. 525, 5 Ann. Cas. 1), analyzed and classified the principles governing divorce cases in many of the States.

There could be no valid divorce decree between plaintiff and defendant Anna Mary in Florida unless they were previously married. To be competent to contract marriage between plaintiff and defendant Anna Mary, it was necessary both parties be unmarried at the time such marriage ceremony took place. Defendant Anna Mary having been previously married to Frank Foto, it was necessary she be unmarried,—that the bonds of matrimony which made

her the wife of Foto be severed. It is claimed such bonds of matrimony were legally severed by divorce decree obtained by her against defendant Frank Foto. If defendant Anna Mary was divorced from Frank Foto, she was divorced from him by the decree rendered in the circuit court for the county of Wayne. But it is established so far as the record herein is concerned that at the time of her application for divorce to the circuit court of Wayne county she was not a *bona fide* resident of Michigan, not domiciled therein, but a transient visitor temporarily present in Wayne county; that she deceived and misled the circuit court of Wayne county in chancery by swearing she was a *bona fide* resident of the State of Michigan for the requisite statutory period, contrary to the facts; that the circuit court of Wayne county was induced to act and to take and exercise jurisdiction of her application for divorce by her fraudulent and deceitful actions and statements.

The record of a decree rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction against the recital of their existence in such record. *Thompson* v. *Whitman,* 18 Wall. (85 U. S.) 457; *Pennoyer* v. *Neff,* 95 U. S. 714; *Bell* v. *Bell, supra; Andrews* v. *Andrews,* 188 U. S. 14 (23 Sup. Ct. 237); *German Savings & Loan Society* v. *Dormitzer,* 192 U. S. 125 (24 Sup. Ct. 221); *People* v. *Dawell, supra; Reed* v. *Reed, supra.* The full faith and credit clause of the Constitution of the United States and the legislation enacted in pursuance thereof applies only when the court rendering the decree had jurisdiction. It does not preclude an inquiry into the jurisdiction of the court in which the judgment was rendered or the right of the State itself to exercise authority over the person or the subject-matter. *Reed* v. *Reed, supra; D'Arcy* v. *Ketchum,*

11 How. (52 U. S.) 165; *Thompson* v. *Whitman, supra; Pennoyer* v. *Neff, supra; Bell* v. *Bell, supra; Andrews* v. *Andrews, supra; German Savings & Loan Society* v. *Dormitzer, supra.* The authority of every tribunal is restricted by the territorial limits of the State in which it is established. *D'Arcy* v. *Ketchum, supra; Pennoyer* v. *Neff, supra.* It is not perceived how any allegation in the record, however strongly made, can affect the right to question it. The object of the evidence is to invalidate the paper as a record. No statements therein have any force. If any such statements could be used to prevent inquiry, a slight form of words might always be adopted so as to nullify effectually the right to such inquiry. They avail nothing if contrary to the facts. *Pennoyer* v. *Neff, supra.*

One who is not a resident of Michigan may not appeal to its courts for divorce. *Wright* v. *Genesee Circuit Judge,* 117 Mich. 244; *Hoffman* v. *Hoffman,* 155 Mich. 328; *Bradfield* v. *Bradfield,* 154 Mich. 115 (129 Am. St. Rep. 468). "Residence," in the divorce statutes of this State, means the place where one resides; an abode; a dwelling or habitation; especially, a settled or permanent home or domicile. Residence is made up of fact and intention. There must be the fact of abode, and the intention of remaining. *Wright* v. *Genesee Circuit Judge, supra.* That defendant in a divorce case may have admitted plaintiff resided in this State is of itself unimportant. Such admission does not confer jurisdiction. If the law were otherwise, the purpose of the statute would be defeated and collusive and fraudulent divorces encouraged. Such holding would be against public policy. *Bradfield* v. *Bradfield, supra; Smith* v. *Smith,* 10 N. D. 219 (86 N. W. 721); *Prettyman* v. *Prettyman,* 125 Ind. 149 (25 N. E. 179); *Schmidt* v. *Schmidt,*

29 N. J. Eq. 496. The presence within its territory of the inhabitants of other States gives the courts of this State no authority to fix or change their status. The State of their residence still retains its control over that. It alone can free its citizens from marital obligations. Any proceedings in this State to that end will be unconstitutional and disregarded elsewhere. *Gregory* v. *Gregory,* 76 Me. 535; *People* v. *Dawell, supra; Reed* v. *Reed, supra.*

Michigan recognizes that divorce proceedings are in the nature of proceedings *in rem,* and are valid when the party applying therefor is legally domiciled within the State and service is had upon a nonresident defendant by publication in accordance with the statute which provides, *first,* the party applying therefor shall have resided in this State for one year immediately preceding the time of filing the bill for divorce; *second,* if the marriage which it is sought to dissolve was solemnized in this State, the party applying for such divorce shall have resided in this State from the time of such marriage until the time of bringing such suit for divorce. No decree for divorce shall be granted in any case except (1) when the defendant is domiciled in this State at the time the bill or petition for divorce is filed; or (2) when the defendant shall have been domiciled in this State when the cause for divorce alleged in the bill or petition arose; or (3) when the defendant shall have been brought in by publication, or shall have been personally served with process in this State, or shall have been personally served with a copy of the order for appearance and publication within this State or elsewhere, or has voluntarily appeared in such action or proceeding. When the defendant in any case for divorce shall not be domiciled in this State at the time of commencing such suit, or shall not have been

domiciled therein at the time the cause for divorce arose, before any decree of divorce shall be granted, the complainant must prove that the parties have actually lived and cohabited together as husband and wife within this State, or that *the complainant has in good faith resided in this State for two years immediately preceding the filing of the bill for divorce.* 3 Comp. Laws 1929, § 12731, as amended by Act No. 139, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 12731, Stat. Ann. § 25.89).

This State recognizes that if a decree of divorce has been granted on notice by publication in another State to the opposite party, it may be ground for granting a decree of divorce in this State. The statute, 3 Comp. Laws 1929, § 12728 (Stat. Ann. § 25.86), provides:

"The circuit courts may, in their discretion, upon application, as in other cases, divorce from the bonds of matrimony any party who is a resident of this State, and whose husband or wife shall have obtained a divorce in any other State."

"The statute requires a full year's residence and a less period does not give the court jurisdiction. * * * Divorce proceedings are wholly statutory and not within the original cognizance of courts of equity. * * * The provision of the statute as to residence is mandatory and it must be made to appear affirmatively; otherwise the court is without jurisdiction." *White* v. *White,* 242 Mich. 555, citing *Bradfield* v. *Bradfield, supra; Hoffman* v. *Hoffman, supra.*

"If the party has not gained a residence in the State of Michigan for the purpose of instituting suit for divorce, their place of residence has not been changed to Michigan, but their residence adheres to the place from whence they came. Divorce proceedings involve, not only the status of the individual

parties thereto, but the State itself is interested. The courts of this State ought not to exercise jurisdiction to determine the marital status of citizens of another State, though its courts may determine the status of its own citizens in such proceedings." *Jackson City Bank & Trust Co.* v. *Fredrick,* 271 Mich. 538.

The statutes and this policy upon the part of this State does not and cannot affect the validity of a divorce granted in any other State where the parties had a *bona fide* domicile and where the parties have been divorced by a court of competent jurisdiction over the subject-matter and the parties, which decree would be entitled to full faith and credit under the Constitution of the United States.

The gist of plaintiff's bill of complaint is the active fraud of defendant Anna Mary in falsely representing to him she had been divorced from her husband, Frank Foto, in Chicago, Illinois, in 1928; falsely representing to the circuit court for the county of Wayne, Michigan, she was a *bona fide* resident domiciled within the State of Michigan when she, in fact, was but a transient visitor therein; falsely representing to plaintiff she was competent to marry him and she had been legally unmarried from Frank Foto; marrying plaintiff when she had no legal right to do so and procuring a divorce from him and a marriage settlement incident thereto and a transfer of a large amount of valuable property from plaintiff to her by fraud and artifice, of which the alleged divorce from Foto and the marriage to plaintiff and her proceedings for divorce from him in Florida are steps, incidents, and landmarks, and the whole proceedings for divorce upon the part of the defendant Anna Mary in Florida were a nullity because that court was imposed upon by a statement she was duly and

legally married to plaintiff in Ohio when she was, in fact and in law, the wife of Foto and incompetent to enter into the marriage relation; that plaintiff was deceived and misled thereby and did not discover the fraud until she had fraudulently obtained from him a large amount of money and property.

It is a principle of international law that each State determines for itself the status of its citizens and may prescribe the conditions under which divorce may be granted; but no State has jurisdiction over the citizens of other States which likewise determine the status of their own citizens. The courts of one State may not, therefore, divorce persons when neither party is domiciled therein. This is apparent from the general principles of international law and is recognized in *Reed* v. *Reed, supra; Bradfield* v. *Bradfield, supra; Hoffman* v. *Hoffman, supra; People* v. *Dawell, supra; Haddock* v. *Haddock, supra.* To give the courts of any State jurisdiction over the marriage relation, one of the parties at least must be a *bona fide* resident of that State. *People* v. *Dawell, supra; People* v. *McCaffrey,* 75 Mich. 115.

It is clear Mrs. Foto, if the allegations of the bill of complaint filed herein are true, and for the purposes of this case they must be taken as true, could have been criminally prosecuted for bigamy or for adultery in this State and she could not have relied successfully upon her Michigan divorce as a defense. *People* v. *Dawell, supra; Hood* v. *State,* 56 Ind. 263 (26 Am. Rep. 21); *People* v. *Baker,* 76 N. Y. 78 (32 Am. Rep. 274); *Van Fossen* v. *State,* 37 Ohio St. 317 (41 Am. Rep. 507); *Adams* v. *Adams,* 154 Mass. 290 (28 N. E. 260, 13 L. R. A. 275). There is no question the divorce decree granted Mrs. Foto was invalid so far as her husband, Frank Foto, is concerned. *Reed* v. *Reed, supra.*

The important question is whether its invalidity may be shown by plaintiff. If the first marriage was not dissolved, there could not have been a second legal marriage. Until the first was dissolved, there was no capacity to contract a second one. *Shaw* v. *Gould,* 37 L. J. Ch. 433 (18 L. T. R. 833). The courts of this State have exercised their jurisdiction over divorce decrees granted in this State and have found a want of jurisdiction to grant the original decree. *Van Slyke* v. *Van Slyke,* 186 Mich. 324. It has been held that such a decree may be directly attacked only by the parties to it and not by strangers to the record. *Baugh* v. *Baugh,* 37 Mich. 59 (26 Am. Rep. 495) ; *Van Slyke* v. *Van Slyke, supra.*

Plaintiff was not a party to the Foto divorce case in Wayne county. He is not interested in whether such divorce proceedings are set aside as between the parties thereto or not. What he claims is, that he was fraudulently induced to enter into a pretended marriage with one not competent to enter into a legal marriage by the false representation made to him by Mrs. Foto that she had been divorced from her husband Frank in Chicago in 1928, and it is from the consequences of this fraud he seeks relief. Though her status as to Foto is of no direct concern to him, he is interested because directly affected by her alleged fraud and claims and seeks to show that as to him she was incompetent to marry him because not legally divorced from Foto.

He claims as to the Florida divorce that, though he entered his appearance and made a settlement therein in reliance upon his having been legally married to defendant in Ohio, such reliance was induced by her fraud ; that he did not know she was incompetent to enter into marriage with him at the time he married her ; that she induced him to believe she was compe-

tent to marry and such marriage was consummated on his part in such belief of her competency; and it has been only since her divorce from him and his property settlement with her he has been disillusioned and discovered she was never legally divorced from Foto, never legally married to him (plaintiff), and that his property settlement with her was induced by her fraudulent representations, acts and conduct. This suit to recover the property fraudulently obtained from him is transitory in character and he claims he has a right in this proceeding to recover the property which he parted with (to her) because of her fraudulent representations, acts and conduct; and that the Foto divorce proceedings and her marriage to and divorce from him (plaintiff) were but incidental to and instruments of her fraud.

It is well settled that a court of equity has jurisdiction in cases of fraud. *John Hancock Mutual Life Ins. Co.* v. *Dick,* 114 Mich. 337 (43 L. R. A. 566); *Mactavish* v. *Kent Circuit Judge,* 122 Mich. 242; *Edwards* v. *Michigan Tontine Investment Co.,* 132 Mich. 1; *Noble* v. *Grandin,* 125 Mich. 383; *Lieberman* v. *Sloman,* 118 Mich. 355; *Tompkins* v. *Hollister,* 60 Mich. 470; *Sherman* v. *American Stove Co.,* 85 Mich. 169; *Cogswell* v. *Mitts,* 90 Mich. 353; *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274 (5 L. R. A. 226, 13 Am. St. Rep. 438); *Chicago & Grand Trunk R. Co.* v. *Miller,* 91 Mich. 166; *Fred Macey Co.* v. *Macey,* 143 Mich. 138 (5 L. R. A. [N. S.] 1036).

It is contended by plaintiff he may show her fraud by parol evidence because his rights and property were affected, and this though the incidental effect of his bill to recover his property upon the ground of fraud may be to indicate the incompetency of the defendant Anna Mary Foto to enter into the marriage with him. *Gregory* v. *Gregory,* 78 Me. 187 (3 Atl.

280, 57 Am. Rep. 792) ; *Neff* v. *Beauchamp,* 74 Iowa, 92 (36 N. W. 905) ; *Shaw* v. *Gould, supra; Adams* v. *Adams, supra; Hall* v. *Hall,* 139 App. Div. 120 (123 N. Y. Supp. 1056) ; *Edson* v. *Edson,* 108 Mass. 590 (11 Am. Rep. 393) ; *Matthews* v. *Matthews,* 139 Ga. 123 (76 S. E. 855) ; *Reed* v. *Reed, supra.*

In *Adams* v. *Adams,* 51 N. H. 388 (12 Am. Rep. 134), it was held the courts have the same power over divorce decrees as decrees in other cases, and may vacate and set the same aside for fraud or imposition.

In *Whitcomb* v. *Whitcomb,* 46 Iowa, 437, plaintiff had married and had children by a second wife after a divorce based upon publication, which divorce was set aside, the court saying that if it imposed hardships upon the children of the second marriage by making them illegitimate it was the result of the wrongful act of plaintiff.

In *Hood* v. *State, supra,* Hood, without being a *bona fide* resident of Utah, obtained a decree of divorce from his wife there and subsequently married another in Kentucky and returned to Indiana to live with her. He was convicted of ''open and notorious fornication'' and appealed, claiming the Utah divorce as a defense. The court of Indiana held the Utah court had no jurisdiction to grant a divorce between citizens of Indiana; that even though a legislative act had been passed by the territorial legislature of Utah divorcing the parties, it would have had no extraterritorial force; that the divorce in Utah was manifestly granted in violation of the sovereignty and jurisdiction of another State and in violation of the plainest principles of international and constitutional law. Hood's conviction was affirmed.

In *Comstock* v. *Adams,* 23 Kan. 513 (33 Am. Rep. 191), Ira Comstock married Avis, his first wife, in

New York, subsequently came to Van Buren county, Michigan, where he obtained a divorce by publication and married Loretta Adams and moved to Kansas. Four children were born of the first marriage and three of the second. After Ira's marriage with Loretta, the circuit court of Van Buren county set aside the decree of divorce from Avis. It was said:

"A party to a decree of divorce obtained by fraud cannot defeat the power and jurisdiction of the court to set aside such decree by consummating a second marriage on the next day after the decree is granted, and the person to whom such party is married has no more power to defeat the exercise of the jurisdiction of the court in such cases by such a hasty marriage than the party has."

In *Adams* v. *Adams, supra,* it was said:

"The fact that a marriage has taken place on the faith of a previous divorce does not preclude an inquiry by the courts of another State into the capacity of the divorced party, and thus into the validity of the divorce, or a denial of the validity of the marriage if the divorce is one which would be decreed void if it were directly in issue."

One court cannot by a simple *ipse dixit* compel other courts to yield jurisdiction. *Thompson* v. *Whitman, supra; Pennoyer* v. *Neff, supra; Hoffman* v. *Hoffman,* 46 N. Y. 30 (7 Am. Rep. 299); *Sewall* v. *Sewall,* 122 Mass. 156 (23 Am. Rep. 299).

In *O'Dea* v. *O'Dea,* 101 N. Y. 23 (4 N. E. 110), the parties were married in New York. Plaintiff filed a bill to annul the marriage, claiming his wife had another husband living. Defendant had been previously married in New York, lived in Toronto, Canada, and her husband went to Cleveland, Ohio, and there obtained a divorce from her by publication, after which she married plaintiff. It was held

the first marriage was valid and the divorce in Ohio was invalid, the court relying upon *People* v. *Baker, supra,* in which case defendant was convicted of bigamy. He had been married in Ohio to Sally West. Plaintiff brought suit in Ohio for divorce, obtained service by publication, defendant did not appear in the Ohio court, and Sally obtained a divorce. Defendant subsequently married in New York. The Ohio divorce was held void by the New York court, the court following *Hunt* v. *Hunt,* 72 N. Y. 217 (28 Am. Rep. 129), saying:

"To make valid in this State a judgment of divorce, rendered by a court of another State, that court must have 'the parties within its jurisdiction,' must 'have jurisdiction of the subject matter and of the parties,' who 'must be within the jurisdiction of the court.' "

This case goes beyond the rule in Michigan.

No one may profit by his own fraud. *Neblett* v. *Macfarland,* 92 U. S. 101. The right of the court to set aside a decree for fraud is well established. *Duncan* v. *Lyons,* 3 Johns. Ch. (N. Y.) 351 (8 Am. Dec. 513); *United States* v. *Throckmorton,* 98 U. S. 61; *Arrowsmith* v. *Gleason,* 129 U. S. 86 (9 Sup. Ct. 237); 2 Pomeroy's Equity Jurisprudence (3d Ed.), p. 1651, § 919.

"The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud. The court of chancery is always open to hear complaints against it, whether committed *in pais* or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another

court; but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, .it will deprive them of the benefit of it, and of any inequitable advantage which they may have derived under it." *Johnson* v. *Waters,* 111 U. S. 640 (4 Sup. Ct. 619).

See, also, *Arrowsmith* v. *Gleason, supra;* 2 Story's Equity Jurisprudence (12th Ed.), §§ 1570–1573; Kerr, Fraud and Mistake (5th Ed.), pp. 352, 353; *Gaines* v. *Fuentes,* 92 U. S. 10; *Barrow* v. *Hunton,* 99 U. S. 80; *Reigal* v. *Wood,* 1 Johns. Ch. (N. Y.) 402.

"If a case of fraud be established, equity will set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivances by which it may have been attempted to protect them. It is immaterial, therefore, whether such machinery and contrivances consisted of a decree of a court of equity, and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud." *Bowen* v. *Evans,* 2 H. L. Cas. 257 (9 Eng. Rep. 1090).

See, also, *Richmond* v. *Tayleur,* 1 P. Wms. 734 (24 Eng. Rep. 591) ; *Barnesly* v. *Powel,* 1 Ves. Sr. 120 (27 Eng. Rep. 930) ; *Niles* v. *Anderson,* 6 How. (Miss.) 365; *Arrowsmith* v. *Gleason, supra.*

A marriage brought about by fraud may be annulled. *Gillett* v. *Gillett,* 78 Mich. 184; *Harrison* v. *Harrison,* 94 Mich. 559 (34 Am. St. Rep. 364) ; *Yanoff* v. *Yanoff,* 237 Mich. 383; *Ferlat* v. *Gojon,* 1 Hopk. Ch. (N. Y.) 478 (14 Am. Dec. 554). If at the time Mrs. Foto married plaintiff she had a former husband then living, her marriage ·with plaintiff was absolutely void. 3 Comp. Laws 1929, § 12723 (Stat. Ann. § 25.81). And it may be shown between the parties to this proceeding the defendant Anna Mary fraudulently imposed upon the circuit court of

Wayne county and led it to exercise jurisdiction where, had the truth been known, it would have had none. *United States* v. *Throckmorton, supra; Moffat* v. *United States,* 112 U. S. 24 (5 Sup. Ct. 10); *Hilton* v. *Guyot,* 159 U. S. 113 (16 Sup. Ct. 139).

Equity administers equal justice founded on honesty, good faith and a conscientious regard of public and private right and duty. A court of equity has been called a court of conscience. Every case demands relief adapted to the facts and dependent upon its own circumstances. The orders and decrees of a court of equity act *in personam.* Equity will not ordinarily suffer any wrong to be perpetrated without an adequate remedy. A court of equity has undoubted jurisdiction to relieve against any species of fraud (*Earl of Chesterfield* v. *Janssen,* 2 Ves. Sr. 125 [28 Eng. Rep. 82]); and fraud has been defined to include all wilful and intentional acts, omissions, and concealments which involve a breach of legal or equitable duty, or breach of conscience, and are injurious to another, or by which undue and unconscientious advantage over another is obtained. 2 Pomeroy's Equity Jurisprudence (3d Ed.), p. 1558, § 873. No lapse of time, however great, no delay in bringing suit, will defeat the right to recover for fraud if the party complaining was ignorant of the fraud. 2 Pomeroy's Equity Jurisprudence (3d Ed.), p. 1646, § 917. The duty upon the part of plaintiff to act arose only upon the discovery of the fraud. 2 Pomeroy's Equity Jurisprudence (3d Ed.), p. 1646, § 917; *Kilbourn* v. *Sunderland,* 130 U. S. 505 (9 Sup. Ct. 594). No judicial decree fraudulently obtained can be set up to defeat a right to recover by plaintiff under the circumstances alleged in his bill of complaint. A purported ceremonial marriage by a person already married is void. Judicial proceedings may not be

employed to perpetrate fraud. One may not beguile the unwary and trap the unsuspecting, or obtain valuable property without consideration which otherwise would not have been obtained, by deceit, deception or fraud, even though equitable proceedings in courts of justice are employed to deceive, mislead and impose upon the injured party in order to accomplish the fraudulent purpose.

The cases which have enunciated the principles above stated have for the most part been those which involve the effect of divorce decrees rendered in another State than that in which the controversy reported occurred, and reliance has been had quite generally upon the full faith and credit clause of the Federal Constitution. But in this State, the powers and jurisdiction of the courts in chancery are coextensive with those of the courts of chancery in England as existing March 1, 1847 (3 Comp. Laws 1929, § 13944 [Stat. Ann. § 27.545]), and are substantially the same as possessed by the Federal courts and by the high court of chancery in England. *Arrowsmith* v. *Gleason, supra.*

The court of chancery here, therefore, has all the power and authority either of the English chancery courts or of the Federal courts; and that the defendant Anna Mary was found within its jurisdiction and here served with process would seem to make the Michigan forum appropriate for the determination of the controversy between the parties. The Foto divorce proceedings were had in Michigan, the parties hereto lived and cohabited together in Michigan, the property involved is to a large extent Michigan property, and the case is properly cognizable here. Courts do not so overvalue the formality and solemnity of judicial action as to preclude themselves from being instrumentalities for the administration of justice.

A decree rendered without jurisdiction is of no effect and ought not to be recognized or enforced, and especially where the court is led to exercise jurisdiction by perjury of the plaintiff. On the other hand, the court should be vigilant to see that no fraud is perpetrated on suitors therein and that the forms of judicial sanctity are not used as a cloak for injustice. If the allegations of the bill of complaint are true, plaintiff has been deceived, misled and defrauded out of his property, and a formal decree by a court of chancery in this State was one of the means which enabled defendant Anna Mary to perpetrate that fraud. Plaintiff alleges the Michigan court was induced by defendant Anna Mary's perjury to take and exercise jurisdiction in the Foto divorce case which she, as a transient visitor, domiciled in Wisconsin, temporarily sojourning in Detroit, had no right to invoke, and she thereby led the court to exercise jurisdiction which could be exercised only if she had resided in and been domiciled in Michigan for the requisite statutory period and the decree of the Michigan court in the Foto case was wholly ineffective to change or determine her status, she being at the time the bill was filed and at the time the decree was granted a legal resident of and domiciled in Wisconsin, and that this exercise of jurisdiction was without warrant and authority and void and the decree rendered therein invalid and such decree is not binding upon the plaintiff; that plaintiff, whose interests were affected by the frauds of defendant Anna Mary in falsely swearing to the bill of complaint in the Foto case, for which she might have been prosecuted for perjury (*People* v. *McCaffrey, supra*), may maintain this suit though in no way a party to the Foto divorce case in Wayne county.

It is claimed by defendant Anna Mary that the divorce decree rendered in Florida between plaintiff

and herself may not be attacked in this proceeding; that the Florida court had jurisdiction of the subject-matter and of the parties; that the decree of divorce rendered in Florida is one entitled to full faith and credit under the Constitution of the United States; that that decree adjudicated the validity of the marriage between plaintiff and defendant though there was no controversial litigation over that question there. *Bond* v. *Markstrum,* 102 Mich. 11, and the cases cited, settled that under some circumstances a former adjudication is conclusive not only of the questions actually litigated, but of the questions which might have been litigated; but where a former adjudication is set up as a defense it must appear the questions were actually litigated and determined in the former suit.

Plaintiff is not here precluded, under the facts alleged by plaintiff, by the decree rendered by the Florida court from questioning in this proceeding the legality of the marriage which the Florida court purported to dissolve. *Jacobson* v. *Miller,* 41 Mich. 90; *Bond* v. *Markstrum, supra; Cromwell* v. *County of Sac,* 94 U. S. 351.

It may be contended that plaintiff may not question the validity of the divorce granted to defendant Anna Mary against Frank Foto in Wayne county. As to that case, plaintiff was a third person. But his rights are here involved and he may raise the question of fraud in that case although he was not a party thereto and not entitled to be heard in the divorce case. *O'Dea* v. *O'Dea, supra; Inhabitants of Cummington* v. *Inhabitants of Belchertown,* 149 Mass. 223 (21 N. E. 435, 4 L. R. A. 131); *Adams* v. *Adams, supra; Shaw* v. *Gould, supra.*

Where a marriage was alleged to have been fraudulently procured, it was said:

"There can be no doubt, that this marriage would be treated as null, by every court of this State, in which its validity might be incidentally drawn in question. The courts of law may try and decide this question, in any of the actions or proceedings which belong to their jurisdiction; such as prosecutions for bigamy, actions of dower, suits in which marital rights are claimed, or any other proceeding involving the legality of the marriage. But a court of law in any of those proceedings, pronounces the marriage valid or void, only for the purpose of deciding the particular suit in which the question arises; and the decision is conclusive, for no other purpose. * * * A power should exist in some judicature, to determine these questions: and such a power should be competent to determine them, for every purpose; to establish the union, where the marriage has been lawful; and where the parties have been illegally married, to sever them and to vacate all pretensions to the relation of husband and wife." *Ferlat* v. *Gojon, supra,* 494.

The statutes in this State recognize that some pretended marriages are absolutely void without any decree of divorce or other legal proceedings (3 Comp. Laws 1929, § 12723 [Stat. Ann. § 25.81]), and where consent of one of the parties to a marriage is obtained by force or fraud and there has been no subsequent voluntary cohabitation, the marriage is void without divorce or other proceedings (3 Comp. Laws 1929, § 12724 [Stat. Ann. § 25.82]); that when a marriage is supposedly void or the validity thereof is doubted, proceedings for annulling the same analogous to divorce proceedings may be instituted (3 Comp. Laws 1929, § 12725 [Stat. Ann. § 25.83]); and when the validity of any marriage is denied or doubted by either of the parties, proceedings may be had to establish and declare the same valid (3 Comp.

Laws 1929, § 12726 [Stat. Ann. § 25.84]). These statutes are separate and distinct from ordinary divorce proceedings.

It is contended the Florida divorce may not be inquired into in this suit for the reason plaintiff therein alleged she was duly and legally married to the defendant and plaintiff (defendant therein) did not deny it. But the Florida suit for divorce "was not instituted for the purpose of determining the validity of the marriage. On the contrary, it assumed the validity of the marriage, and sought the dissolution thereof. The institution of such a suit naturally raised an inference of the validity of the marriage. But this inference was not strengthened by the nature of the decree rendered. In fact, the inference would have been equally strong, and even stronger, had the court denied the divorce. In such a suit, and without any allegations of fact showing the invalidity of the marriage, it would seem that the court had no authority to determine its validity or invalidity, even had it attempted to do so. The only power the court possessed to grant any divorce was such as was granted by the statutes." *Williams* v. *Williams,* 63 Wis. 58 (23 N. W. 110, 53 Am. Rep. 253), citing *Barker* v. *Dayton,* 28 Wis. 367; *Hopkins* v. *Hopkins,* 39 Wis. 167; *Bacon* v. *Bacon,* 43 Wis. 197; *Cook* v. *Cook,* 56 Wis. 195 (14 N. W. 443, 43 Am. Rep. 706).

"When the action is for a divorce for any of the causes named in the statutes, it is necessarily upon the assumption that there has been a valid marriage, or one binding, at least, until adjudged void. But when the validity of the marriage itself is to be determined, then the action should be to affirm or to annul the marriage, and the judgment of affirmance or nullity therein is made by statute 'conclusive upon all parties concerned.' * * * The statutes hav-

ing made a clear distinction between an action to affirm or to annul the validity of a marriage, and an ordinary action for a divorce, it follows that an ordinary decree in such action of divorce cannot have the same effect as to the validity of the marriage as a decree in an action for affirmance or annulment. Thus it appears that the validity of the marriage between the plaintiff and Jones was never tried nor determined in the divorce suit. Certainly the validity of the marriage between the plaintiff and Williams was never tried in that suit.

"The doctrine is familiar that there can be no estoppel any further than jurisdiction of the subject-matter has been obtained. * * * So there can be no estoppel upon questions not determined, and upon the pleadings not determinable. As we have seen, the marriage between the plaintiff and Jones was absolutely void *ab initio,* without any judgment of divorce or other legal proceeding, and hence that the marriage between the plaintiff and Williams was valid and binding. Such being the state of the case, it would be absurd to hold that the plaintiff is conclusively estopped by the subsequent judgment of divorce from showing that she was never the lawful wife of Jones, but was the lawful wife of Williams." *Williams* v. *Williams, supra.*

The want of jurisdiction is a matter which may always be set up against a judgment or decree when sought to be enforced or where any benefit is claimed under it. *Latham* v. *Edgerton,* 9 Cow. (N. Y.) 227; *Ferguson* v. *Crawford,* 70 N. Y. 253 (26 Am. Rep. 589).

"The jurisdiction of a court exercising authority over a subject-matter, may be inquired into in every court where the proceedings of the former are relied on, by a party claiming the benefit of such proceedings. The rule thus laid down, is * * * recognized in all courts, where the common law prevails, as too

firmly settled to be shaken." *Greenvault* v. *Farmers & Mechanics' Bank of Michigan,* 2 Doug. (Mich.) 498.

Any decree of a court which may be attacked for want of jurisdiction notwithstanding the full faith and credit clause of the Federal Constitution if rendered in a foreign jurisdiction may be attacked for the same reason if rendered in the courts of this State notwithstanding the full faith and credit clause. The want of jurisdiction of the person is a good defense in answer to a judgment when set up for any purpose and such jurisdiction is open to inquiry. *Pendleton* v. *Weed,* 17 N. Y. 72; *Ferguson* v. *Crawford, supra.* And there is no distinction in these respects between the effect of domestic and foreign judgments and decrees. The principle applies as well to the records of judgments and decrees of courts of general as well as limited jurisdiction. *Ferguson* v. *Crawford, supra.* A judgment or decree, under the full faith and credit clause, is given no other or different effect in another State than it is entitled to in the courts of the State where rendered. *Bonesteel* v. *Todd,* 9 Mich. 371 (80 Am. Dec. 90).

This is an original independent suit brought by the plaintiff against the defendant Anna Mary and others to obtain equitable relief against defendants. Such right to relief upon the part of the plaintiff is based upon facts not involved in or litigated in either the divorce case of *Foto* v. *Foto* in Wayne county, Michigan, or in the divorce case of *Smith* v. *Smith* in Florida. The gist of the suit is fraud. It is based upon the imposition upon the court in Wayne county by defendant Anna Mary in procuring it to exercise jurisdiction in the Foto divorce case which it would

not have exercised, and had no authority to exercise,
if the true facts had been disclosed; and upon the
fraud and false representations and deceit practiced
upon plaintiff by the defendant Anna Mary.

A court of chancery lays hold of the parties guilty
of fraud, compels them to do what according to the
principles of equity they ought to do, deprives them
of that which they obtained by fraud, and places
them in the position where they would have been if
such fraud had not been perpetrated. *Marshall* v.
*Holmes,* 141 U. S. 589 (12 Sup. Ct. 62). Such court
may say to defendant Anna Mary, you shall reap no
benefit from your fraudulent statements and imposi-
tion upon the circuit court of Wayne county and
upon the plaintiff herein and upon the Florida court.
These restrictions upon the unconscientious use of
defendant Anna Mary's rights because of her fraud-
ulent statements, acts and conduct are a proper
sphere for equitable interference. Such decrees so
obtained by the defendant Anna Mary in the Michi-
gan court against Foto, and in the Florida court
against the plaintiff, may not be set up, if the facts
alleged by plaintiff are true, to prevent his repossess-
sion, by all legal and equitable means, of the money
and property of which he has been defrauded by de-
fendant. The court is fully authorized to adjudge
that the defendant Anna Mary shall not enjoy the
advantage obtained by her by such decrees. *Reigal*
v. *Wood, supra; Bowen* v. *Evans, supra; Johnson* v.
*Waters,* 111 U. S. 640 (4 Sup. Ct. 619); *Arrowsmith*
v. *Gleason, supra; McDaniel* v. *Traylor,* 196 U. S.
415 (25 Sup. Ct. 369); *Simon* v. *Railway Co.,* 236
U. S. 115 (35 Sup. Ct. 255). The court may by its
decree lay hold of the parties and compel them to do
what according to the principles of equity they ought

to do, thereby securing and establishing the rights of plaintiff of which he is alleged to have been deprived by the fraud of the defendant Anna Mary. *Arrowsmith* v. *Gleason, supra; McDaniel* v. *Traylor, supra.* A court of equity in a suit instituted before it may question the proceedings in another court of equity on the ground of fraud, contrivance, or covin. *Manaton* v. *Molesworth,* 1 Eden, 26 (28 Eng. Rep. 590) ; *Earl of Bandon* v. *Becher,* 3 Clark & Fin. 479 (6 Eng. Rep. 1517). In *Earl of Oxford's Case,* 2 White & Tudor, Leading Equity Cas. pp. 1291, 1395 (21 Eng. Rep. 485), and the annotations thereto, this question is discussed.

In *Earl of Bandon* v. *Becher, supra,* decided by the House of Lords, Lord Brougham said:

"It is said that the whole of these proceedings spring from a decree of the court of exchequer in Ireland, and that that decree, being pronounced by a court of competent jurisdiction upon parties legally before it, cannot now be questioned in another court of co-ordinate jurisdiction; but if brought into dispute at all, should be brought into dispute in the court where it was originally pronounced. I agree generally to the proposition, but I must add to it this one qualification, that you may at all times, in a court of competent jurisdiction,—competent as to the subject-matter of the suit itself,—where you appear as an actor, object to a decree made in another court, upon which decree your adversary relies ; and you may, either as actor or defender, object to the validity of that decree, provided it was pronounced through fraud, contrivance, or covin of any description, or not in a real suit, or if pronounced in a real and substantial suit between parties who were really not in contest with each other. * * * It is not an irregularity, it is not an error which is here complained of, but it is that the whole proceeding is

collusive and fraudulent; that it cannot therefore be treated as a judicial proceeding, but may be passed by as availing nothing to the party who sets it up.''

The decree rendered in the circuit court for Wayne county in chancery in the Foto divorce case was without jurisdiction of the plaintiff or of the defendant therein if the allegations of the bill of complaint are true. It was void, and Anna Mary Foto was at the time she contracted the purported marriage with plaintiff the wife of Frank Foto. Such purported marriage was void. That decree was not valid because the court which rendered it was without jurisdiction. According to the case made by the plaintiff's bill of complaint, Anna Mary Foto, a married woman, went through a pretended marriage ceremony with him, obtained a pretended decree of divorce, and acquired from him by reason of her fraud a very substantial amount of money and property. Such pretended divorce decree, having been rendered without jurisdiction and induced by the fraud of plaintiff therein (defendant Anna Mary), may be passed by as availing nothing to her who here sets it up in defense of plaintiff's right to recover his money and property procured from him by her fraud. And the same may be said of the divorce proceedings between plaintiff and the defendant Anna Mary in the Florida court. A court of equity is not to be rendered impotent or compelled to condone wrong. It should administer justice, not injustice,—equity, not inequity. A court of conscience should not be converted into a tool to protect unconscionable and fraudulent schemes. Neither by statute nor judicial decision has the efficiency of equity been impaired or its beneficent strength undermined. Equity never admits its impotency, incom-

petency or inability to remedy injustice. The bill of complaint states a cause of action.

The decree of the trial court is reversed, with costs, and the cause remanded thereto for further proceedings.

BUSHNELL, CHANDLER, and McALLISTER, JJ., concurred with POTTER, J.

WIEST, C. J. (*concurring in the result*). I concur in the result but without joinder in all of the reasoning and declarations.

The court was in error in dismissing the bill for it contained allegations conferring jurisdiction and commanding the taking of proofs.

BUTZEL, SHARPE, and NORTH, JJ., concurred with WIEST, C. J.