# STATE OF MICHIGAN

# COURT OF APPEALS

---

ABDULLATTIEF SULIEMAN,

        Plaintiff-Appellant,

v

SHALAAN FISHER,

        Defendant-Appellee.

UNPUBLISHED
May 26, 2015

No. 320585
Wayne Circuit Court
LC No. 13-112877-DO

---

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

With respect to a separate and highly-contentious action initiated in 2008 in which the parties sued and countersued each other for separate maintenance and divorce, a divorce trial was conducted and the circuit court (family division) issued a ruling from the bench. A no-progress dismissal was later entered by the circuit court when the parties failed to submit a proposed judgment of divorce, as necessary to reduce the bench ruling to judgment form and close the case. But the court subsequently reinstated the proceeding and a judgment of divorce was entered. In an appeal filed by Shalaan Fisher (defendant here), this Court issued an opinion that reversed the circuit court's order reinstating the divorce proceeding, that vacated the divorce judgment, and that remanded the case for entry of an order of dismissal. *Fisher v Sulieman*, unpublished opinion per curiam of the Court of Appeals, issued April 11, 2013 (Docket No. 299212), p 1. In October 2013, after multiple divorce actions between the parties had been dismissed, plaintiff Abdullattief Sulieman filed the instant divorce action in circuit court against Fisher. Later, the circuit court granted Fisher's motion for summary disposition on the basis that the court lacked jurisdiction under MCL 552.9(1) to entertain Sulieman's complaint for divorce.[1] MCL 552.9(1) provides, in relevant part, that "[a] judgment of divorce shall not be granted by a court in this state in an action for divorce unless the complainant *or* defendant has resided in this state for 180 days immediately preceding the filing of the complaint[.]" (Emphasis added.) There was no dispute that Sulieman resided in the state of Wisconsin immediately preceding the filing of his complaint for divorce in Wayne County. There was, however, a dispute with respect to Fisher's residency, as she claimed that she moved from Michigan to Wisconsin and became a

---

[1] In the order, the trial court also denied Fisher's request for sanctions under MCR 2.114.

-1-

Wisconsin resident about two weeks before Sulieman's divorce complaint was filed. The circuit court concluded, following an evidentiary hearing, that Fisher had indeed established residency in Wisconsin, with every intention to remain in Wisconsin, by the date that Sulieman filed the Michigan divorce complaint. Accordingly, the circuit court summarily dismissed Sulieman's complaint under MCL 552.9(1), and he now appeals as of right. We affirm the circuit court's ruling dismissing the divorce complaint, as the court did not err in concluding that it lacked jurisdiction.

## I. BACKGROUND – PRIOR LITIGATION IN MICHIGAN AND WISCONSIN

As elaborated on below, and to the best of our knowledge, there have now been seven divorce actions filed by the parties, including the present action, which have all been dismissed.[2] The first suit was filed in late 2008 as a separate maintenance action by Fisher in the Wayne Circuit Court, and Sulieman filed a counterclaim for divorce. That divorce action is referenced in the opening paragraph of our opinion and was the subject of this Court's unpublished opinion that vacated the resulting divorce judgment. *Fisher*, op. Since the 2008 divorce suit, Fisher has commenced three failed divorce actions in Wisconsin, all in the Milwaukee Circuit Court, and Sulieman has commenced three failed divorce actions in Michigan, all in the Wayne Circuit Court.

As gleaned from this Court's previous opinion regarding the parties, Sulieman and Fisher were married in Detroit in February 2001. Sulieman was originally from Iraq, where he had been trained as a medical doctor, and he eventually immigrated to the United States in 2000. Fisher worked as a court reporter in the Detroit area for over 30 years. The marriage did not produce any children, although both parties had children from previous marriages. The parties resided in a home on Detroit's east side that Fisher had purchased years earlier in 1985. During the marriage, Sulieman was employed off and on in various non-physician jobs in the medical field, working in Grosse Pointe from June 2001 to May 2002, in Miami, Florida, for six months in 2004, in Buffalo, New York, from July 2004 to March 2005, and back in Detroit from June 2005 to about June 2006. Sulieman eventually passed a medical licensing examination in Wisconsin, and he took a position as a physician in that state in June 2008. Since then, he has worked as a doctor in Wisconsin in various employment settings, with intermittent periods of unemployment. For the timeframe at issue in the current appeal, there is no dispute that Sulieman was a resident of the state of Wisconsin, which is reflected in various documents issued by the Wisconsin Department of Transportation.

As indicated above, in late 2008, Fisher filed a complaint for separate maintenance in the Wayne Circuit Court, and Sulieman followed by filing a counterclaim for divorce in January 2009. The divorce litigation was highly contentious, with the parties filing numerous motions in

---

[2] There have also been myriad other civil and personal protection order (PPO) actions filed by the parties in both Michigan and Wisconsin. A Wisconsin trial court described the incessant litigation engaged in by the parties as the "War of the Roses."

the circuit court.[3]   A four-day divorce trial was conducted over a three-month period, and testimony was concluded in January 2010.  The circuit court took the matter under advisement. On February 3, 2010, the circuit court issued a lengthy oral ruling from the bench, making findings of fact and conclusions of law.  The court divided the property at issue, allocated responsibility for debts, awarded Fisher some alimony in gross and attorney fees, and retroactively decreased and then suspended Sulieman's obligation to pay Fisher spousal support. Eventually, in June of 2010, after a no-progress dismissal had been entered and then set aside and after Fisher had filed her first divorce complaint in Wisconsin in May 2010, a judgment of divorce was finally entered by the Wayne Circuit Court embodying its earlier oral ruling from the bench.[4]

---

[3] Over the years and through the course of the extensive litigation between the parties, they have intermittently proceeded as pro per litigants and as litigants represented by counsel.

[4] To give some context to the acrimony that existed and perhaps bearing on the issue of intent here, we note the following facts related to the difficulty experienced by the circuit court in simply having the divorce judgment entered.  The circuit court had directed the parties to prepare a proposed judgment of divorce in conformity with the court's oral ruling, and Fisher's counsel indicated that he would prepare the divorce judgment and submit it under the seven-day rule, MCR 2.602(B)(3).  No judgment was forthcoming, and in March 2010, a notice of intent to dismiss for lack of progress was served by the circuit court on the parties, MCR 2.502.  Both parties then filed motions for reconsideration regarding the court's oral ruling, complaining of various aspects of the ruling.  The circuit court denied the motions, noting that no divorce judgment had yet been submitted or entered.  In correspondence between the parties, Fisher's attorney informed Sulieman that he would not draft a divorce judgment as Fisher was unhappy with the court's oral ruling and that it was therefore up to Sulieman to prepare a judgment.  In early May 2010, Sulieman, acting pro per, filed a handwritten motion to reinstate the case and to enter a judgment of divorce, attaching a proposed one-sentence divorce judgment.  In June 2010, the circuit court entered an order denying Sulieman's motion, ruling that the case was to remain in dismissal status until such time that a proper motion to reinstate and a conforming judgment of divorce were submitted to the court.  Sulieman then filed another handwritten motion to reinstate the case and to enter a judgment of divorce, but failed to attach a proposed divorce judgment. Fisher responded to this motion by claiming that a court in Milwaukee had accepted jurisdiction, that the Wayne Circuit Court no longer had jurisdiction and should recognize the Wisconsin action, and that Sulieman was residing in Wisconsin. The circuit court held a hearing on Sulieman's motion and determined that the no-progress dismissal had been properly entered, that it was entered without prejudice, and that there was "good cause" to set aside the dismissal and reinstate the proceeding.  The court ruled that "good cause" existed because it had invested a great deal of time working on the case, because Fisher had refused to present a judgment of divorce simply because she was dissatisfied with the court's ruling, and because Fisher was engaging in forum shopping by filing the divorce action in Wisconsin.  On June 29, 2010, the circuit court issued a six-page, perfunctory judgment of divorce, which it prepared itself, and which conformed in all essential respects to its oral ruling.

On July 19, 2010, Fisher appealed the circuit court's ruling to this Court. On July 21, 2010, a Wisconsin trial court in Milwaukee dismissed the divorce complaint that had been filed by Fisher, given that the Wayne Circuit Court had now entered a judgment of divorce. Fisher appealed that ruling to the Wisconsin Court of Appeals, which summarily affirmed the Wisconsin trial court's dismissal of Fisher's divorce action. *Fisher v Sulieman*, unpublished opinion of the Wisconsin Court of Appeals, issued April 18, 2012 (Docket No. 2010AP001990).

About one year later, on April 11, 2013, the Michigan Court of Appeals issued its opinion with respect to Fisher's appeal of the Wayne Circuit Court's judgment of divorce. In the opinion, the panel agreed with Fisher's contention "that the circuit court abused its discretion by reasserting jurisdiction and reinstating the Michigan divorce action after it had been administratively closed and after she had filed for divorce in Wisconsin." *Fisher*, op at 9 (MCA, Docket No. 299212). This Court, mostly oblivious to the events in the Wisconsin trial and appellate courts, concluded that Fisher had properly filed for divorce in Wisconsin under that state's residency rules relative to divorce actions and that, while the Wisconsin filing did not divest the local circuit court of its jurisdiction, the Michigan circuit court "should have voluntarily abstained from reasserting jurisdiction and consequently should have declined to reopen the case." *Id.* at 10. The *Fisher* panel rejected the argument that "good cause" existed to reinstate the action. This Court also noted that neither party had been fully satisfied by the circuit court's ruling and that both parties, not Fisher alone, had engaged in forum shopping. The panel held, "We reverse the circuit court's order reinstating the action, vacate the judgment of divorce, and remand to the circuit court for entry of an order dismissing the action." *Id.* at 12.

After this Court vacated the judgment of divorce in its April 11, 2013 opinion, Fisher almost immediately filed a new divorce action in a Wisconsin trial court on April 15, 2013. On May 9, 2013, Sulieman filed a new divorce action in the Wayne Circuit Court. On June 14, 2013, this Court denied Sulieman's motion for reconsideration in regard to its opinion that had vacated the divorce judgment. *Fisher v Sulieman*, unpublished order of the Court of Appeals, entered June 14, 2013 (Docket No. 299212). On August 20, 2013, the Wayne Circuit Court summarily dismissed the new divorce complaint that Sulieman had filed in May of 2013, because Sulieman was still in the process of appealing this Court's earlier opinion to our Supreme Court. In September 2013, the Michigan Supreme Court denied Sulieman's application for leave to appeal relative to this Court's opinion vacating the divorce judgment. *Fisher v Sulieman*, 495 Mich 859; 836 NW2d 687 (2013).[5] On October 16, 2013, with respect to the second divorce action that had been filed by Fisher in Wisconsin, the Wisconsin trial court again dismissed her divorce complaint. The Wisconsin trial court applied the doctrine of "forum non

---

[5] Our Supreme Court later denied Sulieman's motion for reconsideration. *Fisher v Sulieman*, 495 Mich 904; 839 NW2d 462 (2013). Sulieman then filed a petition for certiorari in the United States Supreme Court, which denied a request by Sulieman to proceed *in forma pauperis*, and which gave him three weeks to pay the required docketing fee and to submit a petition in compliance with Supreme Court rules. *Sulieman v Fisher*, __ US __; 134 S Ct 1959; 188 L Ed 2d 959 (2014). The Court later denied a motion for reconsideration filed by Sulieman. *Sulieman v Fisher*, __ US __; 134 S Ct 2745; 189 L Ed 2d 761 (2014).

conveniens,"[6] finding that Fisher was a Michigan resident, that the Michigan courts had jurisdiction, that Fisher was engaging in harassment and forum shopping by improperly filing the complaint in Wisconsin, and that the case unquestionably arose in Michigan. Thus, despite the fact that the Wisconsin trial court also had jurisdiction given Sulieman's status as a resident, the Wisconsin court determined that a Michigan court was the more appropriate forum for a divorce action. The Wisconsin trial court noted that "[m]erely because [the] Michigan Court of Appeals suggests that the action is more conveniently litigated in Wisconsin is of no significance or avail." Fisher has appealed the Wisconsin trial court's ruling to the Wisconsin Court of Appeals, and the appeal is currently pending. *Fisher v Sulieman*, Wisconsin Court of Appeals, Docket No. 2014AP000364. On October 16, 2013, the very day that the Wisconsin trial court dismissed Fisher's divorce complaint, Fisher, undeterred, filed her third divorce action in a Wisconsin trial court (assigned to a different judge). Eventually, and based on the previous dismissal, the Wisconsin trial court also dismissed that third action for divorce, which ruling Fisher has appealed to the Wisconsin Court of Appeals, *Fisher v Sulieman*, Docket No. 2014AP001029, along with the earlier order dismissing Fisher's second Wisconsin divorce suit.

## II. BACKGROUND – THE PRESENT LITIGATION IN THE WAYNE CIRCUIT COURT

On October 31, 2013, at which time Fisher's second Wisconsin divorce complaint had been dismissed 15 days earlier and her third Wisconsin divorce complaint was still pending, Sulieman filed the divorce action at issue in this appeal in the Wayne Circuit Court. In response to Sulieman's complaint for divorce, Fisher filed an answer and objections to the circuit court's exercise of jurisdiction. Shortly thereafter, Fisher filed a motion for summary disposition, arguing under MCL 552.9(1) that neither she nor Sulieman had been residents of Michigan for at least 180 days immediately preceding the filing of Sulieman's divorce complaint. Fisher further asserted that summary dismissal was required under MCR 2.116(C)(6) ("[a]nother action has been initiated between the same parties involving the same claim") and MCR 2.113(C)(2)(complaint caption must identify other civil actions involving the same parties and arising out of the same transaction), considering that Fisher's third Wisconsin divorce action remained pending at the time and was not mentioned in the caption of Sulieman's complaint. Finally, Fisher argued in the alternative that if Michigan did have jurisdiction in regard to the divorce action, the circuit court should invoke the doctrine of forum non conveniens, as Wisconsin also had jurisdiction and Wisconsin was the more appropriate forum.

Fisher maintained in her summary disposition brief that she had moved to and was residing in Glendale (Milwaukee County), Wisconsin, as of October 18, 2013, and was no longer a resident of Wayne County, Michigan. Recall that Sulieman filed the Wayne Circuit Court divorce action on October 31, 2013. Fisher also contended that on October 16, 2013 (date that

---

[6] Forum non conveniens concerns the discretionary authority of a court with jurisdiction to decline exercising that jurisdiction when the ends of justice and convenience of the parties would be better served if the action were brought in a different forum that also had jurisdiction. *Dep't of Transp v American Motorists Ins Co*, 305 Mich App 250, 254; 852 NW2d 645 (2014).

the Wisconsin trial court dismissed her second divorce action and on which she filed her third Wisconsin divorce action), "she decided to move from Michigan and permanently reside in Milwaukee County, Wisconsin." In support, her brief referenced Fisher's attached affidavit. In the affidavit, Fisher averred that she had made her decision to move to Wisconsin on October 16, 2013, and that within two days she found a home in which to reside and moved to that residence, which is located in Milwaukee County. She also averred in the affidavit that she applied for and received a Wisconsin driver's license on October 18, 2013, which listed her current Wisconsin address, while at the same time surrendering her Michigan driver's license. Fisher attached her Wisconsin driver's license to her brief.[7] Fisher additionally asserted in her affidavit that she began receiving mail at her new Wisconsin address effective October 18, 2013, and that since that date, she had traveled back and forth between Milwaukee and Detroit and was served with Sulieman's complaint in Detroit at her "former residence . . . when [she] was temporarily in Detroit."[8]

The record does not contain any document expressly indicating that it is a response to Fisher's motion for summary disposition, but Sulieman did file a motion asking to appear by phone at the summary disposition hearing. And in this motion, Sulieman touched on the issue of Fisher's residency, indicating that the Wisconsin courts had determined that she was not a Wisconsin resident and that she was engaging in improper forum shopping by filing actions in Wisconsin. It appears that Fisher treated the motion as a response to her motion for summary disposition, and in reply she executed and filed a second affidavit in January 2014. Fisher averred that she moved to and began residing in the Wisconsin home on October 18, 2013, that she had continued residing at that address since then, that she intended to reside in Wisconsin

---

[7] Fisher also attached various Wisconsin Department of Transportation documents in order to establish Sulieman's status as a Wisconsin resident; however, once again, there is no dispute that Sulieman was a Wisconsin resident preceding the filing of his divorce complaint.

[8] Attached to Fisher's summary disposition brief were also numerous Michigan court documents and transcripts concerning the time period after the now-vacated judgment of divorce was entered and before this Court vacated that judgment. These documents and transcripts pertained to Fisher's efforts to obtain Sulieman's compliance with the divorce judgment in regard to paying outstanding spousal support and orders awarding her attorney fees. And they reflected the difficulty of discovering and accessing financial information regarding Sulieman and his work as a doctor in Wisconsin. Throughout the years of litigation between the parties, Fisher has repeatedly accused Sulieman of intentionally hiding assets and deceiving the Michigan and Wisconsin courts, including in regard to a $73,000 settlement check that Sulieman had received as part of an employment-discrimination suit that he pursued. Fisher attached these documents to support her argument that, even should the Wayne Circuit Court have jurisdiction to entertain Sulieman's complaint, it should decline to exercise its jurisdiction in favor of a Wisconsin court under forum non conveniens, given that the relevant discoverable information for purposes of a divorce action was in Wisconsin.

indefinitely, that she had formally changed her voter registration to Wisconsin in November 2013, while having her Michigan voter registration voided in December 2013, that she had obtained a Milwaukee Public Library Card in November 2013, and that in November 2013, she established a business mailing address (mailbox rental) in Wisconsin for business-related endeavors. Fisher further averred that she moved to Wisconsin because her Detroit-area home was in foreclosure and because she had lost her job in Detroit on October 8, 2013, and could no longer make a living in the city due to Detroit's bankruptcy that resulted in a lack of transcription referrals. Fisher attached documents supporting the averments in this second affidavit.

On January 10, 2014, the circuit court conducted a hearing on Fisher's motion for summary disposition, where Sulieman and Fisher both appeared and appeared with counsel. The court eventually put Fisher on the witness stand, thereby turning the hearing into an evidentiary hearing.[9] Fisher first testified that all of the averments in her two affidavits were true and accurate. She additionally testified that the Wisconsin house that she was living in was owned by her Wisconsin attorney and that, to defray the cost of rent and to compensate the attorney for his legal services, she was performing office work in counsel's law office. According to Fisher, it was the Wisconsin attorney who suggested to her on October 16, 2013, after the second Wisconsin divorce complaint was dismissed, that she move to Wisconsin. There was no lease or rental document in regard to Fisher residing in the Wisconsin home, and Fisher described the living arrangement as a month-to-month tenancy. Fisher testified that the Wisconsin house was furnished, that she kept her personal possessions there, that she slept at the house, and that she received mail at the residence. With respect to the month of October 2013, Fisher claimed that she lived and slept in the Wisconsin house from October 18th through the 27th and that she drove back to Detroit either on the 28th or 29th for purposes of court proceedings. In regard to the month of November 2013, Fisher testified that she lived and slept in the Wisconsin house from the 5th through the 26th or 27th of November. With respect to the month of December 2013, Fisher indicated that she only spent eight to ten days living in Wisconsin, given that she had to return to Detroit to attend several court proceedings and to celebrate the holidays. As of the date of the hearing, January 10, 2014, Fisher had not yet returned to Wisconsin following the holiday season, due in part to bad weather, but she planned to return to Wisconsin directly after the hearing.

Fisher, who has an adult daughter residing in the Detroit area, testified that the only family she had in Wisconsin, technically speaking, was Sulieman. Fisher additionally testified that she had obtained a Wisconsin notary public stamp or seal, that she was working toward obtaining court reporter certification in Wisconsin, that she had made 50 to 70 prospective employment contacts, absent any luck thus far, that she was not earning any money in Michigan,

---

[9] The circuit court also placed Sulieman on the witness stand, but just for the purpose of asking one question. Sulieman denied that he had repeatedly informed the Wayne Circuit Court that it was inconvenient for him to litigate in Detroit because of his residency and employment in Wisconsin.

and that there was no longer any work available for her in Michigan.[10] Fisher stated that she still owned her Michigan home, but it was in the midst of foreclosure proceedings. She indicated that she would attempt to save it from foreclosure if Sulieman would pay monies he owed to her. Fisher further testified, "I love Wisconsin. I am going to stay there."

The circuit court took the matter under advisement, and it issued a written opinion and order on January 14, 2014, granting Fisher's motion for summary disposition and dismissing Sulieman's complaint without prejudice for lack of jurisdiction. After reciting the applicable statute and controlling caselaw, the circuit court observed and ruled:

> [I]t is clear to the Court that [Fisher] became a resident of Wisconsin prior to the filing of the complaint in this case. [Fisher] credibly testified that she moved to Wisconsin on or about October 17, 2013. She further testified that she was in Wisconsin for the last half of October, nearly all of November, and the first part of December. She indicated that due to court appearances in Michigan, the holidays, and inclement weather she had not yet returned to Wisconsin in January.
>
> [Fisher] also presented credible evidence manifesting her intent to remain in Wisconsin. This evidence includes, but is not limited to, the fact that [Fisher] has a home in Wisconsin. She has obtained a Wisconsin driver's license and given up her Michigan driver's license. She has registered to vote in Wisconsin. She has established a business mailing address in Wisconsin. She is in the process of looking for a job in Wisconsin as a court reporter. She is taking the steps necessary to obtain the certifications to work in Wisconsin. All of these factors indicate [Fisher's] intent to remain in Wisconsin.
>
> Because [Fisher] became a resident of Wisconsin before [Sulieman] filed his complaint, this Court does not have jurisdiction over this matter.

In the opinion and order, the circuit court proceeded to reject Fisher's request for sanctions under MCR 2.114. Given the court's ruling, it was unnecessary for it to reach Fisher's other arguments in support of summary disposition, i.e., application of the doctrine of forum non conveniens, the existence of another pending action regarding the same parties and claim, MCR 2.116(C)(6), and failure to identify the pending action in the complaint's caption, MCR 2.113(C)(2). Sulieman subsequently filed a motion for reconsideration, which was denied by the circuit court on February 11, 2014. Arguments raised by Sulieman in his motion for reconsideration will be addressed below to the extent that they are raised again on appeal. Sulieman, proceeding pro per, filed a claim of appeal in this Court on February 26, 2014. We note that based on a register of actions contained in public on-line records for the Wayne Circuit Court, Sulieman filed a new divorce complaint against Fisher on June 18, 2014, despite the pending claim of appeal. That

---

[10] Fisher acknowledged that she still was registered as a notary public in Michigan and that her motor vehicle was still registered in Michigan.

action, the seventh divorce suit between the parties, was dismissed on November 21, 2014, by the circuit court, presumably because of the jurisdictional problem and the prior dismissal, as well as the fact that this appeal had been pending.

## III. ANALYSIS

MCL 552.9(1) provides in full:

> A judgment of divorce shall not be granted by a court in this state in an action for divorce unless the complainant *or* defendant has resided in this state for 180 days immediately preceding the filing of the complaint and, except as otherwise provided in subsection (2), the complainant or defendant has resided in the county in which the complaint is filed for 10 days immediately preceding the filing of the complaint. [Emphasis added.]

The parties and the circuit court focused on the 180-day state residency requirement of MCL 552.9(1), as will we, and we simply note that the 10-day county residency requirement is equally problematic. "[T]he state residency requirement of MCL 552.9 is jurisdictional[.]" *Stamadianos v Stamadianos*, 425 Mich 1, 7; 385 NW2d 604 (1986). And the failure of a court to comply with the requirements of the statute renders any "divorce decree absolutely void." *Id.* at 6. The plain and unambiguous language of MCL 552.9(1) makes clear that only one of the parties to a divorce suit must have resided in Michigan for 180 days immediately preceding the filing of a complaint.[11] The question posed to us in this appeal is whether the circuit court properly determined that defendant Fisher had not resided in Michigan for 180 days "immediately preceding" the filing of Sulieman's divorce complaint, considering that Sulieman himself undeniably did not meet the 180-day state residency requirement. In *Kar v Nanda*, 291 Mich App 284, 286-287; 805 NW2d 609 (2011), this Court, addressing the application of MCL 552.9(1), recited the governing standards of review:

> The question whether a court has . . . jurisdiction is a question of law that we review de novo. Issues of statutory construction are also questions of law that are reviewed de novo. Whether the requirements of MCL 552.9(1) have been satisfied is a question of fact. Questions of domicile and intent are also questions of fact. We review factual findings for clear error. A finding is clearly erroneous if, on all the evidence, the Court is left with the definite and firm conviction that a mistake has been made. [Citations and quotation marks omitted.[12]]

---

[11] When interpreting a statute, the foremost rule of construction is to discern and give effect to the intent of the Legislature; the most reliable evidence of which is the language of the statute itself. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

[12] Additionally, this Court reviews de novo a trial court's ruling on a motion for summary disposition. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

With respect to our review of a trial court's findings of fact, we heed the language of MCR 2.613(C), which provides that "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."

This Court has equated the term "resided," as used in MCL 552.9(1), with the concepts of "residence and domicile, both of which require an intent to remain[.]" *Kar*, 291 Mich App at 290. "MCL 552.9(1) requires a person to have 'resided,' and 'resided' requires physical presence plus an 'intention to remain.'" *Id.* at 293. "[I]ntent is the preeminent factor for determining residence and . . . an already established domicile is not destroyed by a temporary absence when there is no intention to change domicile." *Id.* at 290, citing *Berger v Berger*, 277 Mich App 700, 703-704; 747 NW2d 336 (2008). The "intent to remain" requirement, however, does not demand an intent to remain in a state permanently or indefinitely. *Kar*, 291 Mich App at 294. With respect to examining intent and conduct, "focus [is] on the party's intent and conduct at or prior to the time of filing." *Id.* at 291.

In a very early opinion issued by our Supreme Court in *Bradfield v Bradfield*, 154 Mich 115, 116; 117 NW 588 (1908), wherein the Court addressed a predecessor statute to MCL 552.9 with comparable language, the Court warned that while "[i]ntention has always been given large consideration" in determining residency, "claimed intention without acts to support it is not controlling." Although intent is the key, "[p]resence, abode, property ownership and other facts are often considered." *Leader v Leader*, 73 Mich App 276, 281; 251 NW2d 288 (1977). Even absent a permanent or indefinite plan to stay in a particular state, a domicile or residence can be established in a state by showing a nexus between the place and a person sufficient to give rise to the creation of significant legal responsibilities and relations. *Kar*, 291 Mich App at 293. "A person who is physically present and intending to remain in an area likely owns property or has a lease for housing, either of which undoubtedly creates 'legal relations and responsibilities of the utmost significance.'" *Id.* (citation omitted).

Here, we conclude that the circuit court did not clearly err in finding that Fisher was no longer a Michigan resident and had become a Wisconsin resident in the two-week period immediately preceding Sulieman's divorce filing on October 31, 2013. There is no dispute that up through October 16, 2013, Fisher was a resident of Michigan. Thereafter, and prior to October 31, 2013, when Sulieman filed the divorce complaint, which is the timeframe that we must focus upon, there was evidence that Fisher: (1) obtained a Wisconsin driver's license; (2) surrendered her Michigan driver's license; (3) found housing in Wisconsin; (4) moved into, furnished, lived in, and slept at the Wisconsin home (October 18-27, 2013); (5) established a Wisconsin mailing address; (6) no longer had employment in Detroit, nor employment opportunities there; (7) had a Detroit home that was in foreclosure; (8) initiated efforts to obtain certifications and find employment in Wisconsin; and (9) that Fisher intended to make Wisconsin her new residence. This evidence supports a finding that Fisher established a physical presence in Wisconsin, that there existed a nexus between Wisconsin and Fisher sufficient to give rise to the creation of significant legal responsibilities and relations, that she made the move with an intent to remain in Wisconsin, and a finding that she intended to terminate her domicile in Michigan. The evidence of Fisher's actions from October 31, 2013, until the hearing on January 10, 2014, simply serve to reinforce these findings. The fact that it was a rather abrupt decision to change residency from Michigan to Wisconsin and that the move may have been

solely motivated by spite or by the desire to gain access to the Wisconsin courts are of no consequence, so long as Fisher established a physical presence in Wisconsin with the intent to remain there. Fisher indicated that she intended to remain in Wisconsin indefinitely and that she had no desire to return to Detroit. To the extent that this was a complete fabrication on her part, which would not be entirely surprising given the history of the litigation and the somewhat unusual circumstances surrounding the move, it was for the circuit court and not this Court on appeal to assess Fisher's credibility, and the court expressly found her to be credible. There simply is no sound legal basis to reverse the circuit court's ruling.

Sulieman maintains that the Wisconsin trial court determined that Fisher was not a Wisconsin resident and that she was engaging in harassment and forum shopping by bringing suit in Wisconsin. It is true that the Wisconsin judge who dismissed Fisher's second divorce complaint made these findings; however, he made those findings on October 16, 2013, before Fisher decided to move to Wisconsin and before she underwent all of the actions consistent with a change of residency. Moreover, the findings of the Wisconsin courts are not controlling.[13] Sulieman argues that Fisher had been a Michigan resident her entire adult life, that she had no familial ties to Wisconsin, and that she had no business or employment relationships or interests in Wisconsin. While these facts might lead one to infer that Fisher has no actual intent to remain in Wisconsin and that her move was suspect, there was an abundance of evidence to the contrary, and, in light of this evidence, we are not prepared to interfere with the circuit court's factfinding, nor will we second-guess its assessment of credibility. Moreover, an individual is free to move to a state and establish residency there even if the person has no history in or connections to the particular state.

---

[13] Sulieman relies in part on a transcript of a hearing in Wisconsin that was conducted on January 14, 2014, four days after the summary disposition hearing in Michigan. The transcript was attached to Sulieman's motion for reconsideration. The Wisconsin hearing concerned a civil action brought by Fisher and her mother against Sulieman and a corporate entity tied to Sulieman, alleging claims of misrepresentation, assault, intentional infliction of emotional distress, and bad-faith in the handling of marital property. Fisher's counsel was present at the hearing, but she was not, given that, according to counsel, she was delayed in traffic on returning from Detroit. The Wisconsin court summarily dismissed Fisher and her mother's action for reasons entirely unrelated to Fisher's residency, but it openly questioned whether Fisher truly lived in Wisconsin considering her lack of presence at the hearing, and it expressed sentiments about forum shopping and harassment on her part, acknowledging the comparable sentiments made by the Wisconsin trial court that had earlier dismissed Fisher's second divorce action. The Wisconsin court was angry with both parties regarding their litigiousness. Ultimately, Fisher's failure to personally appear at the hearing and the speculation by the Wisconsin court about Fisher's residency, absent any evidence on the matter or the need for the court to even comment on the issue, do not undermine the circuit court's finding here, which was based on evidence directly concerning the issue of residency during the relevant timeframe.

Sulieman contends that Fisher continues to reside in her Detroit home; however, he does not cite any record evidence supporting that claim. Sulieman also points to all of the circumstances surrounding the move, including Fisher moving into her Wisconsin attorney's house, claiming that they show the deceit being perpetrated by Fisher and reflect that she had and has no intent to remain in Wisconsin. Again, we agree that Fisher's actions are at least suspect and that she may very well litigate a divorce to judgment in Wisconsin, if the Wisconsin courts allow her to do so, and then immediately move back to Michigan. However, the record is such that we cannot conclude that the circuit court committed clear error in its factfinding. To rule otherwise would essentially require us to reach a holding based on speculation and visceral impulses and not evidence in the record. Sulieman's appellate brief, which incidentally does not conform to the requirements of the applicable court rule, MCR 7.212, rambles and makes numerous allegations, such as claims of perjury by Fisher, that are entirely unsupported by the evidence in the record or are directly contrary to the evidence.[14] It is true, as Sulieman claims, that there was evidence that Fisher still had the ability to act as a Michigan notary public, but this evidence pales in comparison to the mountain of evidence showing a change of domicile to Wisconsin.

Sulieman also relies on an affidavit executed on December 10, 2013, by an individual who averred that he attempted to serve Fisher at her Wisconsin home address "with legal documents authored by . . . Sulieman." The affidavit was submitted to the circuit court for the first time below as an attachment to Sulieman's motion for reconsideration, even though the affidavit was dated one month prior to the hearing date on Fisher's motion for summary disposition, which hearing evolved into the evidentiary hearing. The affidavit indicated that the process server was unsuccessful in serving Fisher at her Wisconsin address on October 21 and 28, November 5 and 17, and December 6, 2013 (one attempt per day). The process server further averred that it was his opinion "that the property was vacant as [he] didn't see any footprints in the snow and when [he] peeked through a window [he] didn't see any visible furnishings and the mail box was crammed with what appeared to be old junk mail." He failed to indicate the date or dates of these observations.

Although a trial court has the discretion to give a party a "second chance" with respect to a motion for reconsideration, it also has the discretion to decline to consider new evidence that could have been presented when the underlying motion was initially decided. *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012); see also *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000) (court does not abuse discretion when denying a motion for reconsideration that relies on evidence that could have been presented to the court the first

---

[14] Sulieman also relies on attachments to his appellate brief that were not filed in the circuit court in connection with the motion for summary disposition, as does Fisher in part. Some of Sulieman's attachments are Wisconsin court documents related to Fisher's efforts to obtain a waiver of appellate court fees on the basis of indigency, and which seem to indicate that Fisher was obtaining welfare benefits in Michigan at the time at issue. However, even if we could consider this evidence, the record nonetheless supports the circuit court's ruling.

time the issue was argued). Here, the circuit court simply denied Sulieman's motion for reconsideration absent elaboration, so we cannot assess how much, if any, consideration or weight was given to the affidavit by the court. Regardless, while the affidavit raises some concerns, it does not require reversal even if considered. Fisher testified that she was staying in Wisconsin from October 18th through the 27th of that month, so the averment of failed service on October 28th would be consistent with Fisher's testimony. Assuming the validity of the affidavit, the missed service on October 21st at 5:00 p.m. could be explainable for a variety of reasons, and had Sulieman timely submitted the affidavit, Fisher would have had the opportunity to address the question.[15] The same can be said for the failed service in November 2013, and we note that the attempted service at 8:00 in the morning on November 5th might be explainable given Fisher's testimony that she returned to and stayed in Wisconsin on November 5th after being in Detroit, perhaps arriving later in the day. As to the December 2013 attempted service, Fisher testified that she was in Detroit a good part of that month. With respect to the process server's observation about the lack of footprints in the snow, this averment most likely pertained to the attempted service in December when Fisher was often gone, not in October and early November. And in regard to the averments about "visible furnishings" and "old junk mail," the lack of elaboration (what window did he peek into; what was the date; how clear could one see through the window; exactly how much mail; etc.) renders the affidavit virtually worthless. Assuming that the circuit court considered the affidavit, which it was not required to consider given the unexplained late filing, the court did not abuse its discretion in denying Sulieman's motion for reconsideration. In sum, reversal is unwarranted.

Finally, Sulieman makes an argument under the doctrine of forum non conveniens; however, because the circuit court found that it lacked jurisdiction, and given our holding affirming that ruling, the doctrine has no relevancy or application.

IV. CONCLUSION

Because the circuit court did not err in finding that neither Sulieman nor Fisher resided in the state of Michigan for 180 days immediately preceding the filing of Sulieman's divorce complaint, MCL 552.9(1), the court properly granted summary disposition in favor of Fisher on the basis of lack of jurisdiction.

Affirmed. Having fully prevailed on appeal, Fisher is awarded taxable costs pursuant to MCR 7.219.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

---

[15] We note that Fisher did not respond to the motion for reconsideration consistent with the requirements of the court rule. MCR 2.119(F)(2) (Unless otherwise directed by the court, "[n]o response to the motion may be filed[.]").